[Civ. No. 11604. First Dist., Div. Two.—May 12, 1941.]

MORRIS S. DAGGETT, Appellant, v. STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS et al., Respondents.

Mento & Read, Emerson W. Read, Joseph W. Mento and H. Nelson French for Appellant.

Frank J. Barry for Respondents.

SPENCE, J.—Plaintiff sought a peremptory writ of mandate to compel the defendants to restore his licenses as a funeral director and as an embalmer. The cause was tried in the superior court and a judgment was entered denying the writ. Plaintiff appeals from said judgment.

Prior to the institution of this proceeding, plaintiff was tried before the defendant board on charges of unprofessional conduct as defined in section 15 of the Funeral Directors and Embalmers Law. (Act 2318, Deering's General Laws, 1937.) He was found guilty by said board under counts 3 and 6 of the complaints filed against him. As a result his licenses as a funeral director and as an embalmer were suspended for sixty days on each of said counts and it was ordered that said periods of suspension should run concurrently.

Plaintiff then brought this proceeding. He alleged in his petition that the complaints filed before the defendant board did not allege sufficient facts and that the evidence before the defendant board was insufficient. The transcript of the proceedings before the defendant board was introduced by plaintiff on the trial. The cause was submitted and the trial court made findings adverse to plaintiff including findings to the effect that plaintiff was guilty of unprofessional conduct as charged in counts 3 and 6. As above stated, judgment was entered denying the writ. On this appeal, plaintiff again claims that the complaints and the evidence were insufficient.

In count 3 of the complaints, plaintiff was charged with a violation of subdivision (k) of paragraph 2 of section 15 of the act. It was alleged therein that plaintiff placed the dead human body of Johanna Jensen in a certain casket and held funeral services for said deceased at Mountain View while said deceased lay in said casket; that thereafter plaintiff transported said deceased in said casket to Sacramento and there removed said deceased from said casket and placed said deceased in a wooden box commonly known as a "county box" and did return said casket to plaintiff's show room and thereafter use said casket. In count 6 of the complaints, plaintiff was charged with a violation of subdivision (c), of paragraph 2 of section 15 of the act. It was alleged therein that plaintiff did "by and through his agent, assistant and employee, Earl Wright" solicit for preparation for burial the human dead body of one M. E. Kemnitzer.

We are of the opinion that the charges contained in each count as above summarized were sufficient as charges of unprofessional conduct as defined in said section 15 of the act. Said charges in each instance were substantially in the language of said section and there were sufficient particulars

alleged, such as names, dates and places, to apprise plaintiff herein of the exact nature of the conduct charged. Certain of plaintiff's argument relating to the alleged insufficiency of the complaints is repeated under his argument relating to the alleged insufficiency of the evidence and will be hereinafter discussed.

It is plaintiff's contention that the evidence was insufficient as to both counts 3 and 6. We find no merit in this contention. With respect to count 3, it was admitted upon the hearing before the defendant board that after placing the named deceased in the casket and conducting funeral services at Mountain View, said deceased was transported to Sacramento in said casket and was thereafter removed from said casket and placed in a wooden box for the disposition of the remains. There was a conflict in the evidence with respect to the use thereafter made of said casket. There was evidence tending to show that said casket was again returned to plaintiff's show-room. Plaintiff testified that said casket was thereafter turned over to his brother who took it to his home several miles away for the purpose of using it as a model for the making of that type of casket. There were many considerations tending to discredit this last-mentioned testimony and the trial court was entirely justified in rejecting it. Plaintiff apparently contends that the section only applies to a second use of a casket for the purpose of placing human remains therein and he therefore challenges both the sufficiency of the complaint and the sufficiency of the evidence with respect to this count. We find no such limitation in the terms of said section. By its terms, it covers "using any casket or part of a casket which has previously been used as a receptacle for, or in connection with, the burial or other disposition of, a human dead body". It was obviously intended to prohibit any further use of a casket which had been previously used in connection with the disposition of a human dead body thereby preventing, or at least discouraging, the type of conduct in which plaintiff admittedly engaged in this case. Plaintiff seems to claim that he did not again "use" said casket but was only intending to "use" it. This claim cannot be taken seriously as his counsel stated in the trial court in his opening statement, referring to the proceedings before the defendant board, "We admitted a certain use of that casket." We are of the opinion that

both the allegations of count 3 and the proof thereunder were sufficient even though there was no allegation or proof of a second use of said casket for the purpose of placing human remains therein.

 Turning to the evidence offered to support count 6, there can be no question that said evidence was sufficient to show that Earl Wright, the manager for plaintiff, solicited for preparation for burial the human dead body of M. E. Kemnitzer. Said Earl Wright heard of an accident and rushed to the scene arriving there before the deputy coroner arrived. He falsely stated to the deputy coroner that he had a written order from a member of the family for the delivery to plaintiff of the remains of said deceased. When asked to produce it, he stated that it was at plaintiff's office. Wright then returned and aroused an employee of plaintiff from his sleep; told him that the deputy coroner was bringing the body to plaintiff's establishment; told him that they might not be able to hold the body but to start embalming as soon as possible and at least a charge for embalming could be collected. Wright then rushed to the apartment house where the widow of the deceased resided. He was well acquainted with the operator of said apartment and, with her assistance, he met the widow of the deceased and obtained from her an order for the coroner to turn the remains over to plaintiff. He then went to plaintiff's establishment where the deputy coroner was still waiting, delivered the order to him and said deputy coroner left the remains at plaintiff's establishment. There can be no doubt that this was the type of conduct which the section was designed to prevent.

 The only question which plaintiff seriously argues is the question of whether he can be charged with the acts of his manager in the absence of evidence showing that he authorized or aided or abetted in such solicitation. He cites certain criminal cases in support of his view that he cannot. These authorities are not in point. This was not a criminal action but was a proceeding in which plaintiff was charged with unprofessional conduct as defined by said section 15. Among other things, said section covers the "Solicitation of human dead bodies by the licensee, his agents, assistants or employees, . . . ". The legislature has seen fit to require a licensee to see that his agents, assistants and employees refrain from soliciting human dead bodies under penalty of

being charged with unprofessional conduct if he does not do so. It was probably thought that such solicitation by agents, assistants and employees could not be prevented in any other manner. The validity of the section is not attacked and the provisions thereof appear entirely reasonable. Under the circumstances it was not necessary to either plead or prove that plaintiff had authorized such solicitation or that he aided or abetted therein.

Throughout the briefs, plaintiff refers to the proceeding as a *quasi*-criminal proceeding and claims that the charges were not proved beyond a reasonable doubt. This seems to be the real burden of plaintiff's attack. But such proceedings are not *quasi*-criminal and the rules governing the *quantum* of proof required in criminal trials are not applicable. (*Webster* v. *Board of Dental Examiners*, 17 Cal. (2d) 534 [110 Pac. (2d) 992].) The trial court made its own findings in the *mandamus* proceeding and, as above indicated, we are of the opinion said findings are supported by substantial evidence. This conclusion puts an end to our inquiry regarding the sufficiency of the evidence on the appeal (*Drummey* v. *State Board of Funeral Directors*, 13 Cal. (2d) 75 [87 Pac. (2d) 848]), and all discussion by plaintiff as to whether the evidence proved the charges beyond a reasonable doubt or even by a preponderance thereof is beside the point.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.